UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NOAH D.,

                              Plaintiff,

v.                                                              3:21-cv-00110 (TWD)

COMM'R OF SOC. SEC.,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN, GORTON LAW FIRM<br>  *Counsel for Plaintiff*<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY 13761 | PETER A. GORTON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF THE GENERAL COUNSEL<br>  *Counsel for Defendant*<br>6401 Security Boulevard<br>Baltimore, MD 21235 | JAMES J. NAGELBERG, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

      Noah D. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying him Supplemental Security Income ("SSI") benefits. (Dkt. No. 1.) Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18. (Dkt. Nos. 12, 18.) Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. Nos. 4, 7.)

For the reasons discussed below, Plaintiff's motion is denied, and Defendant's motion is granted. The Commissioner's decision is affirmed.

**I.   BACKGROUND**

Plaintiff was born in 2000 and received SSI as a child. (T. at 62-74.[1]) In school, he had an Individualized Education Plan ("IEP") and was in special education classes. *Id*. at 53, 268. He had poor attendance and dropped out of school at the end of the 2017-18 academic year because he missed almost 120 days of school. *Id*. at 46-47, 177-84. He did not receive a general education diploma. *Id*. at 53. He has never tried to get a job because of his health condition and does not think anyone would hire him. *Id*. at 47. Plaintiff testified he has migraines weekly and is in bed for two days. *Id*.

As required by law, when Plaintiff turned age 18, the Social Security Administration ("SSA") conducted a continuing disability review based on the adult standards of disability defined by 20 C.F.R. § 416.920 and determined Plaintiff was no longer disabled as of January 9, 2019. *Id*. at 75-88, 90. He requested reconsideration, and on May 29, 2019, Plaintiff and his mother testified before a disability hearing officer with the state agency. *Id*. at 98-111. Based on the testimony and review of the records, the disability hearing officer determined Plaintiff was not disabled under the applicable adult disability standards. *Id*. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 114-15. On January 17, 2020, Plaintiff appeared with counsel and testified at a hearing before ALJ Kenneth Theurer held by video teleconference. *Id*. at 40-61. A vocational expert also testified. *Id*.

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein. Citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

On January 31, 2020, ALJ Theurer issued an unfavorable decision. *Id*. at 17-33 ("Based upon a redetermination of the claimant's continuing eligibility for supplemental security income upon attaining age 18 under section 1614(a)(3)(H) of the Social Security Act, the claimant's disability ended on January 9, 2019, and the claimant has not become disabled again since that date."). On December 2, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6, 38, 160-63.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have h[is] disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

3

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

An individual who receives SSI as a child must, upon attaining age 18, have his or her disability redetermined. 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987. The redetermination is governed by 20 C.F.R. § 416.920(c)-(h). "The same rules that apply to new adult disability applications apply to an age 18 redetermination, except for the provisions pertaining to substantial gainful activity." *Diane B. v. Comm'r of Soc. Sec.*, No. 19-cv-628, 2021 WL 1975400, at *2 (W.D.N.Y. May 18, 2021) (citing 20 C.F.R. § 416.987(b)).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III. THE ALJ'S DECISION AND PARTIES' CONTENTIONS

On January 31, 2020, after careful consideration of the entire record, the ALJ found Plaintiff attained age 18 on August 28, 2018, and was notified that he was found no longer disabled as of January 9, 2019, based on a redetermination of disability under the rules for adults who file new applications. (T. at 22.) At step two, the ALJ found Plaintiff has the following severe impairments: autoimmune polyglandular syndrome, asthma, migraines, hypothyroidism, and attention deficit hyperactivity disorder. *Id*. At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 23-26.

Next, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> the claimant should not work in a noise environment greater than moderate as defined in the Dictionary of Occupational Titles. The claimant should avoid work outdoors in bright sunshine and work

>with bright or flickering lights such as would be experience[d] in welding or cutting metals. The claimant should avoid work at unprotected heights or in conjunction with dangerous machinery. The claimant should avoid concentrated exposure to smoke, dust, or respiratory irritants. The claimant retains the ability to understand and follow simple instructions and directions. He can perform simple tasks with supervision and independently. The claimant can maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule. The claimant is able to relate to and interact appropriately with others in carrying out simple, repetitive tasks. He can handle reasonable levels of stress defined as performing work with decision making related to the performance of simple tasks in an environment with few, if any, workplace changes.

*Id*. at 26. At step four, the ALJ noted Plaintiff has no past relevant work. *Id*. at 31. Next, he indicated Plaintiff was in the "younger individual" category, has a limited education, and is able to communicate in English. *Id*. At step five, relying upon the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. Thus, the ALJ concluded Plaintiff's "disability ended on January 9, 2019, and [he] has not become disabled again since that date." *Id*. at 33.

Plaintiff now appeals to this Court arguing the ALJ failed to consider (1) the extent to which the frequency and duration of Plaintiff headaches/migraines would cause him to be unable to meet employer demands for staying on task and/or maintaining acceptable levels of attendance and (2) how his need to attend to medical tests and/or appointments also would impair his ability to meet employer standards of staying on task and/or attendance. (Dkt. No. 12 at 6-9.) Relatedly, Plaintiff contends the ALJ's step five determination is not supported by substantial evidence. *Id*. at 9-10. In response, Defendant contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence. (Dkt. No. 18 at 5-10.) Plaintiff submitted a reply with permission from the Court. (Dkt. Nos. 20, 21.)

## IV.   DISCUSSION

### A.   The ALJ's RFC Determination is Supported by Substantial Evidence.

A claimant's RFC is the most he or she can do despite his or her limitations. 20 C.F.R. 416.945(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). "In making a [RFC] determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citation omitted). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling 85-15, 1985 WL 56857, at *6). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ determined Plaintiff could do a range of simple work, can maintain attention/concentration for tasks, and regularly attend to a routine and maintain a schedule despite his impairments including Plaintiff's history of "severe" migraine headaches associated with photophobia, phonophobia, nausea, and sometimes vomiting. (T. at 22, 26, 27, 279-80.) In calculating Plaintiff's RFC, the ALJ appropriately considered the prior administrative medical findings and medical opinions for consistency and supportability in the overall record, and ultimately found the opinions of the examining and non-examining consultative physicians, Gilbert Jenouri, M.D., Sara Long, Ph.D., Radharani Mohanty, M.D., Oliver Fassler, Ph.D., to be

more persuasive than the opinion of treating neurologist, Nicole Brescia, M.D. (T. at 29-31.[2])  In doing so, the ALJ articulated how he considered the prior administrative medical findings medical opinions and his reasons for finding the various aspects of each opinion persuasive or less persuasive.  *Id*.  It is within the ALJ's purview to resolve any material conflicts in the evidence and various opinions of record.  *See Bliss v. Colvin*, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014); *see also Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Plaintiff nonetheless argues the ALJ improperly determined he could meet the on-task and attendance demands of work because he failed to consider the extent to which the frequency and duration of his headaches/migraines and medical appointments would cause him to be unable to meet employer demands for staying on task and/or maintaining acceptable levels of attendance.  (Dkt. No. 12 at 6-9.)  In support of this assertion, Plaintiff points to the December 10, 2019, opinion of Dr. Brescia who estimated Plaintiff would be off-task "[g]reater than 20% but less than 30% in a workday" and absent more than four days per month due to migraine

---

[2]  Although not an acceptable medical source, the ALJ discussed the teacher questionnaire submitted by Randi Belanger and found it persuasive based upon her experience of working with Plaintiff in an academic setting for four years and because it was consistent with the information provided in Plaintiff's IEP.  (T. at 30-31, 175-87, 202-12.)  Ms. Belanger indicated Plaintiff had no problems attending and completing tasks, interacting and relating with others, or caring for himself, but that his frequent absences caused delays.  *Id*. at 203-04, 207.

headaches. (T. at 317-18.[3]) But, as noted, the ALJ found Dr. Brescia's opinion "less persuasive" than the opinions of the examining and non-examining consultative physicians because her opinion was inconsistent with her own treatment records. *Id*. at 31.[4] Further, regarding time off-task and absenteeism, the ALJ found Dr. Brescia's opinion "speculative" because she was aware that he did not go to work or school, nor was he involved in any volunteer activities. *Id*.

This Court has explained that findings related to time off-task or absenteeism present "analytical difficulty" because "neither . . . can be readily confirmed or dispelled just by examining treatment notes or objective criteria . . . [but] rest in some substantial part on the black box of the treating providers' experience with [the] plaintiff's various conditions." *Amanda R. v. Comm'r of Soc. Sec.*, No. 6:20-CV-596 (DNH), 2021 WL 3629161, at *8 (N.D.N.Y. Aug. 17, 2021). "The ability to maintain a regular schedule falls under the category of concentration and persistence." *Andrea N. v. Saul*, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *5 (N.D.N.Y.

---

[3] In the questionnaire, Dr. Brescia indicated Plaintiff suffers from migraines that are "headaches located over the top of his head that are pounding in quality, worse with activity, and worse with light and sound." (T. at 317.) Dr. Brescia stated Plaintiff's suffering from migraine headaches five times a week is consistent with his underlying condition and that his recovery period of 24 hours is consistent with the underlying condition. *Id*. She indicated the condition causes Plaintiff pain, fatigue, diminished concentration, diminished work pace, and would cause him to need to rest at work. *Id*. Dr. Brescia noted Plaintiff has "autoimmune polyglandular disease and hypothyroidism which also contribute to his fatigue." *Id*. at 318.

[4] To that end, on November 6, 2019, Plaintiff presented to Dr. Brescia at Upstate University Hospital for a pediatric neurology initial clinical visit for migraines. (T. at 325.) It was noted he was previously seen by Dr. Zhang, at the same practice three years prior and, at that time, indicated his migraines were "manageable." *Id*. Plaintiff reported that beginning in January 2019, he had two to three "headache days" per month while on Topiramate and magnesium. *Id*. His migraine headaches improved with sleeping and worsened with lights, sounds, and activity. *Id*. There was no aura, nausea, or vomiting associated with the headaches. *Id*. at 325-26. Dr. Brescia indicated Plaintiff was inactive, overweight, had seven hours of screen time a day, and poor water intake. *Id*. at 326. His neurological exam was normal and Dr. Brescia noted his brain MRI and MRA in 2017 were unremarkable. *Id*.

Mar. 9, 2020) (cleaned up). "Thus, one place an ALJ can look to analyze this issue is to other opinions in the record that examine the overall severity of a claimant's mental impairments in the relevant functional area." *Amanda R.*, 2021 WL 3629161, at *8. "Another place an ALJ can look is to a claimant's activities of daily living, which sometimes shed light on the ability to make and keep a routine and/or a daily schedule." *Id*.

Here, consultative examiner Dr. Long, whose opinion the ALJ found persuasive, determined Plaintiff did not appear to have limitations regarding simple and complex tasks and making appropriate decisions. (T. at 30, 293.) Significantly, she opined Plaintiff is able to interact adequately with others, maintain attention and concentration, and maintain a regular schedule. *Id*. at 293. Dr. Long further opined Plaintiff is able to regulate emotion, control behavior, maintain personal hygiene, and is aware of appropriate precautions. *Id*. Dr. Long noted Plaintiff reported significant problems limiting his schedule due to physical health. *Id*. However, consultative examiner Dr. Jenouri, whose opinion the ALJ also found persuasive, noted Plaintiff's history of migraine headaches about three times per month and prescription for Topiramate and opined only that Plaintiff should avoid smoke, dust, and other known respiratory irritants. *Id*. at 29, 297. Similarly, Dr. Mohanty reviewed the record and found Plaintiff could perform a full range of work without exertional limitations, but should avoid hazards and known irritants due to asthma and migraines. *Id*. at 30, 84.

State agency analyst Dr. Fassler, whose opinion the ALJ found persuasive, reviewed the evidence in December 2018, and opined Plaintiff has moderate limitations in his ability to concentrate, persist, or maintain pace. *Id*. at 25, 30, 80. "Moderate limitations in concentration, persistence, and pace can be accommodated by a limitation to unskilled work and simple, routine tasks." *Amanda S. v. Kijakazi*, No. 3:21-CV-240 (DJS), 2022 WL 4104008, at *8 (N.D.N.Y.

Sept. 8, 2022) (citing *McIntyre*, 758 F.3d at 152); *see also Shannon v. Berryhill*, No. 6:16-cv-06796 MAT, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) ("[A] plaintiff's moderate limitation in maintaining regular attendance and sustaining an ordinary schedule is not inconsistent with an RFC finding limiting Plaintiff to 'simple, routine tasks.'") (collecting cases); *Landers v. Colvin*, No. 14-CV-1090S (WMS), 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (RFC limiting the plaintiff to simple, repetitive, and routine tasks accounts for moderate imitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance). Indeed, "[t]he Second Circuit has held that moderate limitations in work-related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work." *Shawn V. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0997 (WBC), 2021 WL 3022295, at *4 (W.D.N.Y. July 16, 2021).

In terms of daily living, Plaintiff reported playing video games seven hours each day. *Id*. at 48, 329. He also watches television and listens to the radio. *Id*. at 329. He takes care of his own grooming, walks on the treadmill one hour daily, and cooks and cleans on occasion. *Id*. at 292, 295. However, on "migraine days", which he experiences weekly, Plaintiff spends the day sleeping and does not play video games, walk on the treadmill, or do chores. *Id*. at 52. From January 2019 to January 2020, Plaintiff testified he had medical appointments once every four to six months. *Id*. at 47-48.

Although Plaintiff has pointed to evidence of symptoms that he believes demonstrate a more serious impairment in his ability to remain on-task and attend work, such as headaches, fatigue, pain, nausea, and medical appointments, (Dkt. Nos. 12 at 6-9, 21 at 1-2), it is not the proper role of this Court to reweigh evidence. *David W. v. Comm'r of Soc. Sec.*, No. 8:17-CV-0734 (CFH), 2018 WL 6088095, at *6 (N.D.N.Y. Nov. 20, 2018) (collecting cases).

Moreover, the ALJ specifically addressed all of these issues at steps two and three of the analysis. *Id*. at 22-26.[5] It is clear from both the ALJ's discussion and from his explicit statements that he considered "all symptoms" and the "record as a whole" that the proper consideration was given. *Id*. at 26, 32 ("[B]ased upon the complete record of evidence, including medical treatment records, medical opinions, education records, and testimony from the claimant and his mother, the claimant has the residual functional capacity as stated herein, and he has the ability to do physical and mental work activities on a *sustained basis* despite limitations from his impairments.") (emphasis added). *See Wright v. Berryhill*, 687 Fed. Appx. 45, 49 (2d Cir. 2017) ("We are satisfied . . . that the ALJ properly considered the combined effect of the Plaintiff's impairments in determining that the Plaintiff had the [RFC] to perform a range of light work. The ALJ specifically stated that he had considered 'the entire record' and 'all symptoms' in reaching his determination." (citation omitted)); *Frank B. v. Saul*, No. 1:19-cv-668 (GLS), 2020 WL 4596867, at *2 (N.D.N.Y. Aug. 11, 2020).

In sum, when formulating Plaintiff's RFC, the ALJ is tasked with the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination that is consistent with the evidence as a whole. *See Camarata v. Colvin*, No. 6:14-CV-0578 (MAD),

---

[5] For example, in addition to Dr. Brescia's opinion and treatment records, the ALJ discussed in June 2017, Plaintiff reported that his headaches had "improv[ed] significantly" after starting Topamax. (T. at 27, 29, 279.) He reported "rarely" having headaches when on Topamax. *Id*. at 279-80. In March 2019, Plaintiff reported "infrequent" headaches two days a month that had increased when his Topamax dosage was reduced to a "small dose." *Id*. at 31, 300-01. His medication was adjusted accordingly. *Id*. at 301. At step three, the ALJ found Plaintiff has a moderate limitation concentrating, persisting, or maintaining pace and cited to the prior administrative medical findings of Drs. Long and Fassler. *Id*. at 25, 80, 292-93. The ALJ also noted the IEP reported Plaintiff has difficulty staying focused and listening to directions and that he always has his smart phone on, watching videos or playing games instead of completing work. *Id*. at 25, 178. In the function report, Plaintiff's mother said he does not finish what he starts because he becomes bored or distracted. *Id*. at 25, 221.

2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)).  Here, the ALJ was less persuaded by Dr. Brescia's work-preclusive opinion[6] related to Plaintiff's migraine headaches insofar as it was unsupported by her treatment records and was speculative.  *See, e.g.*, *Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *11 (N.D.N.Y. Mar. 30, 2021) (finding no error by ALJ in declining to include limitations to being off-task and/or attendance in RFC determination, where substantial evidence supported the ALJ's assignment of weight and rejection of treating physician's restrictive limitations); *Melanie W. v. Comm'r of Soc. Sec.*, No. 19-cv-724, 2020 WL 2079432, at *8 (N.D.N.Y. Apr. 30, 2020) (finding it "within the ALJ's discretion to reject [a provider's] estimates of absenteeism and time off-task" when there was a "lack of evidence supporting such extreme limitations") (citing *O'Connor v. Comm'r of Soc. Sec.*, No. 11-cv-1425, 2013 WL 1180963, at *5 (N.D.N.Y. Mar. 20, 2013) (ALJ properly rejected physician's opinion regarding plaintiff's absenteeism rate of four days a month, despite some evidence to the contrary, where "objective medical evidence in the record provid[ed] substantial evidence to support the ALJ's finding that [the opinion] is speculative.")).

Accordingly, the Court finds the ALJ's RFC determination is supported by substantial evidence; therefore, remand is not warranted on this ground.

**B.     The ALJ's Step Five Determination is Supported by Substantial Evidence.**

The burden shifts to the Commissioner at step five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a

---

[6] The vocational expert testified that maximum employer tolerance for time off-task is less than 15%, only one absence per month, and an employee cannot leave work early without notice more than twice a month.  (T. at 59-60.)

hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and] . . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *Id*. at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citation omitted).

At step five, the ALJ found, based on the vocational expert's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy. (T. 31-32, 56-60.) Plaintiff argues the ALJ's step five analysis is flawed because his RFC was not supported by substantial evidence and the vocational expert testimony was based on a hypothetical question which did not properly account for his inability to maintain acceptable levels of staying on task and/or attendance. (Dkt. No. 12 at 9-10.) However, because this Court has determined substantial evidence supports the ALJ's RFC determination and the hypothetical question proposed to the vocational expert properly reflected the RFC limitations, this contention fails. *See Ridley G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-773 (CFH), 2021 WL 4307507, at *11 (N.D.N.Y. Sept. 22, 2021) (citing *Wavercak v. Astrue*, 420 F. App'x 91, 94-95 (2d Cir. 2011); *Chasity A. v. Kijakazi*, No. 3:21-CV-551 (DJS), 2022 WL 1984148, at *6-7 (N.D.N.Y. June 6, 2022).

Accordingly, the Court finds the ALJ's step five determination is supported by substantial evidence; therefore, remand is not warranted on this ground.

## V. CONCLUSION

Based on the foregoing, the ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Dated: September 28, 2022
      Syracuse, New York

*[signature]*
Thérèse Wiley Dancks
United States Magistrate Judge